# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLEN NOLLE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:11-cv-01503 |
| | ) | |
| v. | ) | Judge Mark R. Hornak |
| | ) | |
| GUITAR CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Constructive Discharge Claim in his Amended Complaint, ECF No. 9. The Court has considered Plaintiff Glen Nolle's Amended Complaint, ECF No. 8, the pending Motion and Brief in support, ECF No. 10, Plaintiff's Response in Opposition, ECF No. 11, and Defendant's Reply Brief, ECF No. 12. For the reasons that follow, Defendant's motion is denied.

## I. FACTUAL BACKGROUND

Mr. Nolle alleges that his employer, Guitar Center, discriminated against him because of his age in violation of the Age Discrimination in Employment Act of 1969, as amended (ADEA). Title 29 U.S.C. § 621 et seq. When considering a motion to dismiss under Fed. R. Civ. P. 12, the Court must accept the factual allegations in the Complaint as true and draw all reasonable inferences in the Plaintiff's favor. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Therefore, for the purposes of the disposition of Defendant's Motion, the essential facts are as follows.

Mr. Nolle, a salesperson and musician, was hired by Guitar Center[1] as a salesperson in 2005 in its store in Monroeville, Pennsylvania. Am. Compl. ¶ 10-11. He performed well and was transferred to Guitar Center's store in Robinson Township, Pennsylvania in 2008, where he also performed well. *Id.* ¶¶ 12-14. In 2009, Mr. Nolle began to have some disagreements with a co-worker Michael Rushlander relating to Rushlander's allegedly unprofessional performance on the job; Mr. Nolle is 54 years old, while Rushlander is 42. *Id.* ¶¶ 9, 16-25. Mr. Nolle and other employees reported Rushlander to their store manager, Chris Roy. *Id.* ¶ 26. Roy was aware of Rushlander's bad behavior and disciplined him a number of times, but never removed him from the Robinson store. *Id.* ¶¶ 27-28. The interactions between Mr. Nolle and Rushlander continued to escalate, and after a disagreement between them, Nolle received a "final written warning" pursuant to which he was transferred back to the Guitar Center Store at Monroeville, even though Mr. Nolle never received any prior discipline of any kind. *Id.* ¶ 29. Rushlander, however, was retained at the Robinson store. *Id.* ¶ 33. At the time Mr. Nolle was transferred, he was the oldest employee in the store. *Id.* ¶ 37. Mr. Nolle complained to Human Resources. *Id.* ¶ 35.

As a result of his transfer, Mr. Nolle suffered the loss of his regular client base, and was denied commissions from the continued purchases of his regular customers from the Robinson store. *Id.* ¶¶ 34, 43. He was provided with shifts that were less desirable because they were known to have lower customer volume, and was scheduled for fewer hours, than younger, less qualified employees. *Id.* ¶¶ 45-47. As a result of these measures, Mr. Nolle "went from earning a

---

[1] Defendant asserts that its proper title is Guitar Center Stores, Inc. ECF No. 10 at 1. In accordance with the entity's title as it still remains on the docket, and for ease of reference, this opinion will refer to Defendant as "Guitar Center."

2

livable wage to earning almost nothing" – he "could not continue to work for Guitar Center and maintain his standard of living." *Id.* ¶¶ 60-61.

Mr. Nolle was also subjected to a number of disciplinary measures, involving one in which Mr. Nolle was falsely accused of saying that he would strap hand grenades to himself, *id.* ¶¶ 48, 50, and another in which Defendants accused Mr. Nolle for the first time that his giving guitar lessons outside of work was a conflict of interest, *Id.* ¶ 49. Plaintiff filed a charge of discrimination with the EEOC but continued to be harassed and accused of misconduct. *Id.* ¶ 52. Due to the transfer, the loss of wages, the mistreatment, and his health issues, Mr. Nolle resigned from his job at Guitar Center and acquired new employment. *Id.* ¶¶ 62-65.

Mr. Nolle originally brought the instant action against Defendant on November 25, 2011. ECF No. 1. Guitar Center moved to dismiss Plaintiff's constructive discharge claim on May 17, 2012. ECF No. 5. In response, Plaintiff filed an Amended Complaint on June 6, 2012, ECF No. 8. Defendant filed another motion to dismiss Plaintiff's constructive discharge claim in the Amended Complaint on June 25, 2012, ECF No. 9, arguing that even as amended, under Fed. R. Civ. P. 12(b)(6), Mr. Nolle's complaint still did not make out a viable claim for relief for constructive discharge. The motion does not move to dismiss Mr. Nolle's suit in its entirety. *See generally* ECF No. 9. Thus, the only question presently before the Court is whether Plaintiff has adequately pled a constructive discharge claim under the ADEA.

## II. DISCUSSION

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Third Circuit has laid out a three step process for the Rule 12(b)(6) analysis:

> First, the Court must "take[] note of the elements a plaintiff must plead to state a claim." Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a Court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus*, 641 F.3d at 563 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 679 (2009)) (internal citations omitted).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claim(s) presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *See Iqbal*, 556 U.S. at 679. In short, a motion to dismiss should not be granted if a party alleges facts which could, if established at trial, entitle him to relief. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

Defendants move to dismiss Mr. Nolle's claim of constructive discharge. "The ADEA prohibits, among other things, the 'discharge' of a covered individual 'because of such individual's age.'" *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993) (quoting 29 U.S.C. § 623(*l*)). The Third Circuit employs "an objective test to determine whether an employee can recover on a claim on constructive discharge . . . [specifically,] whether a reasonable jury could find that the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001) (internal citations omitted); *see Clowes*, 991 F.2d at 1161. The Third Circuit in *Clowes* also laid out a number of factors that may be indicative of a constructive discharge: "(1) threat of discharge; (2) suggesting or encouraging resignation; (3) a demotion or reduction of pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of

4

job responsibilities; and (6) unsatisfactory job evaluations." *Lebofsky v. City of Phila.*, 394 F. App'x 935, 939 (3d Cir. 2010) (citing *Clowes*, 991 F.2d at 1161). The factors should demonstrate that when the Plaintiff resigned, he was "fleeing from a stick" and not "reaching for a carrot." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 975 (3d Cir. 1998).[2]

Mr. Nolle's complaint alleges facts that comport with at least three of the above factors. First, and most importantly, Mr. Nolle alleges that he suffered a significant reduction in pay. He claims that the "reduction in [his] wages was so severe that Plaintiff could not continue to work for Guitar Center and maintain his standard of living," Am. Compl. ¶ 60, that he "went from earning a livable wage to earning almost nothing," *id.* ¶ 61, and that he suffered an "almost total loss of income," *id.* ¶ 62. This factor weighs strongly in Nolle's favor. *Compare Lit v. Infinity Broad. Corp. of Pa.*, 423 F. Supp. 2d 485, 491 (E.D. Pa. 2005) (finding constructive discharge where Plaintiff's salary was reduced to one fourth of its previous level) *with Connors*, 160 F.3d at 974 (no constructive discharge where Plaintiff's "retirement was 'involuntary' only in that the difference between the two companies' retirement and benefits packages made retirement the clearly preferable option based on the financial repercussions of the decision.").

While Defendant argues that Mr. Nolle does not meet the standards of *Twombly* because he could and should have provided in his complaint the specific amount by which his wages were reduced, *Twombly*'s standards are not so stringent. *See In re Ins. Brokerage Antitrust Litig.*,

---

[2] Defendant, in its Motion and Reply, does not cite any of the *Clowes* line of cases in its discussion of the necessary elements of a constructive discharge claim, but instead asserts that "plaintiff, as a necessary predicate to a constructive discharge claim, must establish that a hostile work environment existed. . .", and argues that Mr. Nolle failed to meet the elements of a hostile work environment claim. ECF No. 10 at 4. Defendant is half right. In *Pa. State Police v. Suders*, 542 U.S. 129 (2004), "the Court held that, in order to succeed on a compound claim of constructive discharge due to hostile work environment, a claimant must make an additional showing beyond that required for a hostile work environment claim alone. . . . [However,] in *Suders*, the Court did not set forth a rule for *all* constructive discharge claims, but rather dealt only with the issue of an employer's liability for constructive discharge *resulting from a hostile work environment* attributable to a supervisor." *Stremple v. Nicholson*, 289 F. App'x 571, 573 (3d Cir. 2008) (affirming decision that allowed ADEA constructive discharge claim to prevail while it dismissed hostile work environment claim) (emphasis added). Thus, contrary to Defendant's assertion, Mr. Nolle need not allege the elements of a hostile work environment, but only that the "events were sufficiently intolerable that a reasonable person would have felt compelled to resign." *See id.* (citing *Duffy*, 265 F.3d at 167).

5

618 F.3d 300, 320 n.18 (3d Cir. 2010) ("The touchstone of Rule 8(a)(2) is whether a complaint's statement of facts is adequate to suggest an entitlement to relief under the legal theory invoked and thereby put the defendant on notice of the nature of the plaintiff's claim.") (citing *Twombly*, 550 U.S. at 565 n.10). Mr. Nolle's description of his reduction in pay, while left to be fleshed out with precision during discovery, does allege sufficient facts to show entitlement for a claim to relief and put Defendant on notice of the nature and basis of his claim.

Second, Mr. Nolle alleges an involuntary transfer to a less desirable position. He states that after an incident involving a younger employee, Michael Rushlander, with whom Mr. Nolle had a disagreement, Mr. Nolle was punished for allegedly harassing that employee, and was involuntarily transferred from the store in Robinson to the store in Monroeville. Mr. Nolle alleges Rushlander was retained at Robinson, while Mr. Nolle was transferred out, because he was younger. Mr. Nolle states that as a result of this transfer he lost his client base that he had worked to build up, and commissions from sales to them. Moreover, Mr. Nolle alleges that after his transfer to the Monroeville store, he was provided less desirable shifts (that had lower customer traffic and thus lower earning potential) and was scheduled for fewer hours than younger, less qualified salespeople.

Third, Mr. Nolle alleges that he suffered continued accusations of misconduct, involving an interrogation on speakerphone about another employee's false allegation that Mr. Nolle said he would strap hand grenades to himself, a charge that Mr. Nolle's giving guitar lessons away from work constituted a conflict of interest (for the first time in his long tenure as a Guitar Store employee), and other harassment.[3]

---

[3] Although the Amended Complaint also speaks to the second *Clowes* factor by stating that "Defendant acted as if they wanted him to resign," Am. Compl. ¶ 63, such an allegation is more in the "conclusory" category and not entitled to any significant presumption of truth. *See Malleus*, 641 F.3d at 563.

In sum, at this point in the litigation, Mr. Nolle has alleged sufficient facts to make it plausible to conclude that he could satisfy the elements of a constructive discharge claim as set out in *Clowes*, 991 F.2d 1159, *Connors*, 160 F.3d 971, and *Duffy*, 265 F.3d 163, and that he suffered a constructive discharge at the hands of Guitar Center. At this point, it is not necessary for the Court to conclude that on the facts alleged he will prevail, only that he may do so. Mr. Nolle's allegations rise well beyond the level of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that fail the *Twombly/Iqbal* test. *Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 678). For these reasons, Defendant's Motion to Dismiss Plaintiff's Constructive Discharge Claim is denied. An appropriate order will issue.

/s/ Mark R. Hornak

Mark R. Hornak
United States District Judge

Dated: October 12, 2012

cc: All counsel of record

7